


MAR 04 2016

CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SOUTH DAKOTA NETWORK, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>TWIN CITY FIRE INSURANCE COMPANY CO.,<br><br>Defendant. | Case: 16-CV-4031<br><br>**COMPLAINT**<br>**-AND-**<br>**JURY TRIAL DEMAND** |

Plaintiff, South Dakota Network, LLC, by and through its attorneys of record, for its Complaint against the Defendant, Twin City Fire Insurance Company, states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. South Dakota Network ("SDN") is a limited liability company, organized under the laws of the State of South Dakota, with its principal place of business in Sioux Falls, Minnehaha County, South Dakota.

2. SDN is comprised of seventeen members, all of which are local exchange carriers in South Dakota. These local exchange carriers provide telecommunications services to the customers in their respective service territories in South Dakota. SDN assists its members by providing them with what is called centralized equal access service. It provides this service through its interconnected fiber network that spans the state of South Dakota.

3. SDN is a manager-managed limited liability company. SDN is managed by nine managers elected by and from SDN's member companies.

4. Twin City Fire Insurance Company ("Twin City Fire") is a member of the Hartford Insurance Group, an Indiana corporation engaged in the business of insurance.

5. The amount in controversy in this matter exceeds the sum of $75,000.00, exclusive of interest and costs.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Venue is proper pursuant to 28 U.S.C. § 1391(a).

7. This Complaint is also brought pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a question or actual controversy between the parties as described in detail below.

## FACTUAL BACKGROUND

8. On January 9, 2005, SDN obtained a policy of insurance, which policy included a provision for Directors, Officers and Entity Liability Coverage, from Twin City Fire. Each year, since 2005, SDN has renewed this policy with Twin City Fire. The policy at issue in the instant litigation provided coverage for the period of January 9, 2014 through January 9, 2015 (the "2014-2015 D&O Policy"). A true and correct copy of said 2014-2015 D&O Policy is attached hereto as Exhibit A.

9. All conditions and requirements imposed by the 2014-2015 D&O Policy upon SDN, including payment of premiums, have been satisfied. The 2014-2015 D&O Policy was in full force and effect during the period relevant to this action.

10. SDN's claim under the 2014-2015 D&O Policy stems from a dispute with one of its members, James Valley Cooperative Telephone Company ("James Valley Cooperative") over a services agreement SDN entered into with AT&T Corp. ("AT&T") in September 2014 (the "SDN/AT&T Services Agreement"). By way of background, the services agreement between SDN and AT&T was, in part, intended to address ongoing billing disputes between those

entities. James Valley Cooperative and its wholly-owned subsidiary, Northern Valley Communications, LLC ("Northern Valley") (collectively "James Valley Cooperative"), also had outstanding billing disputes with AT&T and originally participated in discussions with SDN and AT&T to resolve said disagreements, but in July 2014 decided to part ways with SDN to pursue its own course of action against AT&T.

11. On or about November 27, 2013, James Valley Cooperative and Northern Valley sent a cease and desist letter to SDN demanding that SDN refrain from pursuing further negotiations with AT&T for the resolution of SDN's billing disputes with AT&T and for the provisioning of certain telecommunications services to AT&T. James Valley Cooperative and Northern Valley asserted that SDN's actions interfered with their own claims against AT&T for nonpayment of services provided to AT&T by Northern Valley.

12. With that same November 27, 2013 correspondence, James Valley Cooperative and Northern Valley also sent to SDN, as a courtesy, a draft unsigned complaint asserting various causes of action it believed it could pursue against SDN. The draft complaint was never signed or filed.

13. SDN disagreed with the assertions made by James Valley Cooperative and Northern Valley in the November 27, 2013 letter and draft complaint. However, because James Valley Cooperative is a member of SDN and SDN wanted to work with James Valley Cooperative in good faith to resolve the outstanding issues, SDN timely and fully complied with James Valley Cooperative's demands and James Valley Cooperative neither served nor filed any Complaint against SDN.

14. Within several days after notice was received from James Valley Cooperative in November 2013, the matters with which James Valley Cooperative was concerned were resolved and the parties revitalized their joint efforts to solicit an agreement with AT&T. Representatives

from SDN and James Valley Cooperative met in Groton, South Dakota on December 6, 2013 to discuss strategy.

15. In the spring of 2014, SDN's CEO and the General Manager for James Valley Cooperative were collectively negotiating with AT&T regarding a proposal to resolve the issues of contention between SDN, James Valley Cooperative and AT&T.

16. From mid-April through June 2014, SDN's CEO and James Valley's General Manager continued to negotiate with AT&T regarding a prospective framework for resolving issues with AT&T.

17. As a result of SDN's and James Valley Cooperative's collective negotiations with AT&T, a joint proposal regarding the prospective framework for working with AT&T was submitted to AT&T on behalf of SDN and James Valley Cooperative.

18. In early July 2014, James Valley Cooperative notified SDN that it was no longer interested in jointly pursuing a settlement with AT&T for past due amounts. On July 29, 2014, James Valley Cooperative filed a collections action against AT&T in federal court in order to assist in collecting the past due amounts owed to James Valley Cooperative by AT&T.

19. Since SDN and James Valley Cooperative had been working cooperatively in their disputes with AT&T and had come to a joint resolution on the prospective framework for working with AT&T, James Valley Cooperative did not name SDN in that lawsuit.

20. In September 2014, SDN entered into the SDN/AT&T Services Agreement. The terms included within that contract for services were virtually identical to the joint proposal prepared by SDN and James Valley Cooperative.

21. SDN understood the agreement proposed to AT&T to be consistent with the desires of James Valley Cooperative.

22. On or about November 17, 2014, however, SDN unexpectedly received from Northern Valley, through its counsel, a cease and desist letter demanding that SDN terminate the SDN/AT&T Services Agreement. In the cease and desist letter, Northern Valley asserted that it was damaged by the SDN/AT&T Services Agreement because the services provided to AT&T by SDN pursuant to the SDN/AT&T Services Agreement were services that Northern Valley had the exclusive right to provide to AT&T. SDN disagreed with Northern Valley's claims.

23. On or about March 25, 2015, James Valley Cooperative and its wholly-owned subsidiaries (collectively, the "James Valley Parties"), filed a lawsuit against SDN, its Chief Operating Officer, and seven members of its Board of Managers. The action is styled as *James Valley Cooperative Telephone Company, James Valley Communications, Inc., and Northern Valley Communications, LLC v. South Dakota Network, LLC, Mark Shlanta, Mark Benton, Rod Bowar, Jerry Heiberger, Don Snyders, Dennis Law, Randy Houdek, and Bryan Roth*, Circuit Court, County of Brown, Fifth Judicial Circuit, State of South Dakota, Civ. No. 15-134 (the "Lawsuit"). A true and correct copy of the Complaint filed in the Lawsuit is attached hereto as Exhibit B.

24. In the Lawsuit, the James Valley Parties asserted the following claims against SDN: Breach of SDN's Operating Agreement; Breach of Contracts; Breach of Duty of Good Faith and Fair Dealing; Intentional Interference with Business Relationships; Violation of South Dakota Trade Regulation SDCL § 37-1-4; Unjust Enrichment; and Declaratory Judgment (relating to the parties' respective legal rights and obligations under their tariffs and contracts, as well as the validity of SDN's contractual relationship with AT&T). As against SDN's Managers, the James Valley Parties asserted the following claims: Breach of Operating Agreement; Breach of Duty of Good Faith and Fair Dealing; and Declaratory Judgment.

25. On or about April 8, 2015, SDN timely provided notice of the Lawsuit to Unitel Insurance Group, SDN's agent. On or about April 8, 2015, Unitel Insurance Group forwarded said claim to Twin City Fire. Shortly thereafter, SDN provided additional information regarding the Lawsuit to Twin City Fire, both in writing, as well as telephonically.

26. The James Valley Parties did not serve SDN and its Managers with the Summons and Complaint in the Lawsuit, but instead allowed them to admit service, which SDN and its Managers did on June 6, 2015.

27. Twin City Fire properly identified SDN as an insured under the D&O Policy. Twin City Fire properly acknowledged that SDN's CEO Mark Shlanta and the seven Managers named as Defendants in the Lawsuit would have the potential for coverage under the "Wrongful Acts" provision of the Policy. Twin City Fire, however, analyzed all issues under SDN's 2013-2014 D&O Policy, rather than its 2014-2015 D&O Policy.

28. By letter dated July 1, 2015, Twin City Fire denied coverage for the Lawsuit, stating that SDN's claim for coverage was based upon a demand made against SDN on November 27, 2013, and that all later claims and demands were related to the November 27, 2013 claim (the "Denial Letter").

29. In reaching its conclusion, Twin City Fire relied upon the definitions of an "Entity Claim" and "Insured Person Claim" to determine that the November 27, 2013 cease and desist letter and accompanying courtesy complaint constituted a claim under the policy. Twin City Fire further invoked the Interrelationship of Claims provision of the 2013-2014 D&O Policy to establish that it was the 2013-2014 D&O Policy that applied, and not the 2014-2015 D&O Policy. Because the 2013 through 2014 policy required that notice of a potential claim be provided within 60 days after termination of the policy period, Twin City Fire asserted that SDN's notice of claim from April 8, 2015 was provided more than 60 days after termination of

the policy period, thereby making it untimely and resulting in an alleged failure of SDN to satisfy the conditions precedent to coverage.

30. In its Denial Letter, Twin City Fire asserted that SDN's alleged failure to provide timely notice was dispositive of the coverage issue, but also stated additional reasons for potential denial of coverage, including assertions that SDN's Policy did not provide coverage for claims based upon any contract or agreement or any alleged claim of price fixing, restraint of trade, or unfair trade practice.

31. Believing that Twin City Fire had misapprehended the facts and timeline relevant to its claim under its Policy, SDN provided Twin City Fire with additional correspondence and information directly contradicting the stated reasons for denial of coverage. SDN provided facts to establish that the issues raised in the November 27, 2013 cease and desist correspondence were resolved, thereby establishing that the alleged claim never ripened into an Entity or Insured Person Claim as defined in any of SDN's D&O Policies. SDN further provided evidence that the claim for which it sought coverage first arose in November 2014, thereby invoking the coverage provided to it under the 2014-2015 D&O Policy. Finally, SDN established that it provided timely notice of the claim to Twin City Fire as required by the 90-day notice period of the 2014-2015 D&O Policy.

32. On September 30, 2015, the James Valley Parties filed a First Amended Complaint against SDN, its CEO and Managers. The First Amended Complaint contained two new causes of action: Conversion and Judicial Dissolution of SDN.

33. On November 9, 2015, SDN provided written notice of the First Amended Complaint to Twin City Fire. In its notice to Twin City Fire, SDN requested coverage for the First Amended Complaint and again urged Twin City Fire to rescind its July 1, 2015 denial of coverage.

34. Despite SDN's continued efforts to secure coverage, Twin City Fire has continued to deny coverage, therefore making the instant action unavoidable.

## RELEVANT PROVISIONS OF THE POLICY

35. Section II, Subsection (D) of the 2014-2015 D&O Policies, defines an "entity claim" as follows:

(D) Entity Claim means any:

(1) written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand;
(2) civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or
(3) criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

against an Insured Entity.

See Exhibit A.

36. Section II, Subsection (F) of the 2014-2015 D&O Insurance Policy defines an "Insured Person Claim", in relevant part, as follows:

(F) "Insured Person Claim" means any:

(1) written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand;
(2) civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or
(3) criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

against an Insured Person.

See Exhibit B.

37. Section X of the 2014 Policy defines "Interrelationship of Claims" as follows:

> X. INTERRELATIONSHIP OF CLAIMS
> Solely with respect to all Liability Coverage Parts:
>
> All Claims based upon, arising from or in any way related to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim for all purposes under this Policy first made on the earliest date that:
>
> (A) any of such Claims was first made, regardless of whether such date is before or during the Policy Period[.]

See Exhibit B.

38. No Notice of Claim was required during the 2013-2014 policy period because the pertinent language in that particular D&O Insurance policy did not specify non-monetary relief as a claim for which notice was required.

## COUNT 1 - DECLARATORY JUDGMENT

39. SDN incorporates Paragraphs 1 through 38 as if fully set forth herein.

40. As set forth above, and as required by Rule 57 of the Federal Rules of Civil Procedure, an actual justifiable controversy exists concerning the rights, duties and obligations of the parties arising out of the terms and conditions of the Policy.

41. SDN therefore requests that the Court enter judgment declaring that SDN made a timely and valid demand upon Twin City Fire for coverage under the terms of its 2014-2015 D&O Policy, and that coverage is available to SDN for the Lawsuit and that Defendant owes Plaintiff the duty to defend the claims asserted against it and to indemnify Plaintiff against any such claims

## COUNT 2 - BREACH OF CONTRACT

42. SDN incorporates Paragraphs 1 through 41 as if fully set forth herein.

43. Twin City Fire issued to SDN a policy of insurance for coverage of its Directors and Officers. Pursuant to the language of the 2014-2015 D&O Policy, Twin City Fire promised

to pay all sums, up to the policy limit, for certain types of claims. The 2014-2015 D&O Policy SDN purchased from Twin City Fire and on which SDN has paid premiums constitutes a legally enforceable contract.

44. In March 2015, SDN, its CEO, and seven of its named Managers were named in a lawsuit filed against them by one of SDN's members. At the time of the Lawsuit, SDN had a policy of insurance with Twin City Fire.

45. SDN tendered the defense of the Lawsuit to Twin City Fire pursuant to the 2014-2015 D&O Policy, but Twin City Fire refused to defend and provide coverage for SDN as required by the terms of the Policy.

46. Twin City Fire has failed to make full and proper investigation of SDN's claims and has further wrongfully denied coverage to SDN under the claim it made, thereby breaching its legally enforceable contract with SDN.

47. As a result of Twin City Fire's breach of contract and failure to provide a defense or coverage for the same, SDN has suffered damages in an amount to be proven at trial.

## COUNT 3 – BAD FAITH AND VEXATIOUS REFUSAL TO PAY

48. SDN incorporates Paragraphs 1 through 47 as if fully set forth herein.

49. Under the terms of the 2014-2015 D&O Policy, Twin City Fire is obligated to provide coverage of the Lawsuit, and to defend and indemnify Plaintiff against any claims asserted therein.

50. Twin City Fire failed to properly investigate and objectively evaluate the factual allegations contained in the Lawsuit; it has ignored evidence which supports coverage; and despite receiving all the necessary information to do so from SDN, it has continued to refuse to properly investigate and evaluate the allegations contained in and giving rise to the Lawsuit, as well as the insurance policy language modifications it made from the 2013-2014 policy to the

2014-15 policy.

51. Twin City Fire's actions as described above have been vexatious or without reasonable cause. Furthermore, Twin City Fire knew its actions were unreasonable or was reckless in its indifference to the facts of the Lawsuit and proof submitted therein.

52. Twin City Fire's conduct constitutes a violation of its duty of good faith and fair dealing to its insured, which breach constitutes an independent cause of action sounding in tort.

53. There is no reasonable basis for Twin City Fire's continued refusal to provide a defense or coverage for the Lawsuit. Twin City Fire's refusal and failure to provide coverage under the Policy is unreasonable and vexatious, thereby entitling SDN to recover its reasonable attorneys' fees and other costs of this action.

## COUNT 4 – VIOLATION OF PUBLIC POLICY

54. SDN incorporates Paragraphs 1 through 53 as if fully set forth herein.

55. Insurance policies written and sold in South Dakota must comply with and be consistent with the public policy of our state.

56. The facts existing in 2013 were distinct from those which existed in 2014, particularly because SDN discontinued negotiations with AT&T in 2013 upon the request of James Valley Cooperative and Northern Valley, but in 2014 did ultimately enter into an agreement with AT&T which is the principal complaint of Northern Valley's 2014 notice and 2015 lawsuit.

57. Twin City Fire has argued in its communications with SDN that its definition of "interrelated acts" contained in the 2013, 2014 and 2015 policies is so broad as to mandate that the 2014 and 2015 claims were so closely interrelated with the 2013 acts that timely notice to the company within the parameters established by the 2013 policy was required.

58. The broad interpretation of the terminology of "interrelated claims" as sought by Twin City Fire emasculates the policy's term and coverage events, and is inconsistent with the public policy of this state.

59. The facts alleged by Twin City Fire to be claims asserted during 2013 are not sufficiently related to the actions of James Valley Cooperative and the SDN parties in 2014 and 2015 to be foreclosed as a "single or interrelated claim" policy provision. Twin City Fire's reliance upon this language is misplaced. Twin City Fire has therefore improperly denied coverage and indemnification to SDN.

WHEREFORE, SDN respectfully requests that the Court enter Judgment against the Defendant as follows:

1. A determination that the Policy at issue affords SDN coverage under the circumstances of the claim asserted by SDN;
2. Damages in an amount to be determined at trial;
3. Prejudgment interest as allowed by law;
4. Attorneys' fees;
5. Other relief deemed appropriate and necessary by this Court.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Ryan J. Taylor

Respectfully submitted this 4th day of March, 2016.

Meredith A. Moore
Ryan J. Taylor
Jonathan A. Heber
Cutler Law Firm, LLP
100 N. Phillips Ave., 9th Floor
PO Box 1400
Sioux Falls, SD 57101-1400
Telephone: (605) 335-4950
Email: meredithm@cutlerlawfirm.com
ryant@cutlerlawfirm.com
jonathanh@cutlerlawfirm.com

And

Robert C. Riter, Jr.
Darla Pollman Rogers
Margo D. Northrup
RITER, ROGERS, WATTIER & NORTHRUP, LLP
319 S. Coteau - P. O. Box 280
Pierre, SD 57501-0280
Telephone: (605) 224-5825
E-mail: dprogers@riterlaw.com
m.northrup@riterlaw.com

*Attorneys for Plaintiff*